ESTOPPEY v. UNITED STATES.
No. 46698.

United States Court of Claims.
May 2, 1949.

Lee Warren James, of New York City (James and Fields, of New York City, on the brief), for plaintiff.

Eugene R. Weisbender, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen. (T. Hayward Brown, of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

Plaintiff filed his petition herein embracing two separate causes of action. The first is based upon the Air Corps Act of July 2, 1926, 10 U.S.C.A. § 310(i), under which plaintiff claims $400,000 as compensation for the alleged use, by the National Cash Register Company for the Air Corps, of drawings, designs, prototype, suggestions and improvements of and in bombsights allegedly invented by him. The second cause of action is based upon the Act of June 25, 1910, as amended July 1, 1918, 35 U.S.C.A. § 68 [now 28 U.S.C.A. § 1498], under which plaintiff claims $500,000 as compensation for the alleged infringement by the National Cash Register Company for the Air Corps of his United States patents Nos. 2,118,041 and 2,194,141 for an improved Sighting Device and Bomb Sighting Device, respectively.

The defendant has withdrawn its general traverse extending to the first alleged cause of action and filed its demurrer in lieu thereof pursuant to order of court.

In his petition, plaintiff alleges that subsequent to August 5, 1926, he "discovered, designed, invented, developed and perfected improvements in bombsights and formulae, calculations, devices and mechanisms used in connection therewith" and that on April 19, 1934, he granted to the Gaertner Scientific Corporation a license to manufacture and sell "bombsights embodying claimant's designs and patents made and invented after the 5th day of August 1926" on a limited and nonexclusive royalty basis without the right to license to others.

Plaintiff further alleges as a basis for his claim that in November 1941, his licensee, Gaertner Scientific Corporation, delivered to the Air Corps at the request of the United States "drawings, designs, and a prototype of claimant's new and improved bombsight" and that pursuant to a further request by the United States upon his licensee, Gaertner, to "send" a specialist to demonstrate said drawings, designs and prototype, plaintiff personally appeared at Wright Field, Ohio, as such specialist and demonstrated and discussed with Air Corps officials the bombsight prototype and the drawings and designs thereof which had been delivered by his licensee, Gaertner, as well as further "modifications and improvements" thereof. On December 17, 1941, pursuant to request by the Air Corps officials, Gaertner, the licensee, "promptly delivered" shop drawings of its bombsight to said officials.

Thereafter, plaintiff alleges defendant's representatives delivered said bombsight prototype, drawings, designs, suggestions, and improvements made by plaintiff to the National Cash Register Company for mass production; that said National Cash Register Company had no previous knowledge or experience with bombsights but did have facilities for mass production; that said company did produce in excess of 20,000 bombsights for the United States in accordance with said designs, drawings, prototype, and suggestions. Later, on February 24, 1942, the United States entered into an agreement with Gaertner Scientific Corporation for the manufacture of 80 bombsights embodying plaintiff's drawings and designs plus alterations discussed by Air Corps officials and plaintiff in November 1941. Pursuant to said agreement Gaertner produced and delivered to the United States said 80 bombsights.

Plaintiff says he has received no compensation for the use of his drawings, designs, prototype, suggestions, and improvements from the United States, the National Cash Register Company or the Gaertner Scientific Corporation and that his claims for such compensation both oral and written have been denied by the United States by final decision of the Air Judge Advocate General on October 12, 1944.

The issue thus presented by defendant's demurrer is whether or not drawings and designs of a bombsight are "designs * * * relating to aircraft or any components thereof" within the meaning of Section 10(i) of the Air Corps Act of July 2, 1926,[1] so as to give this court jurisdiction under said act of plaintiff's first cause of action.

This court has recently had occasion to consider the Air Corps Act of 1926, its history and particularly the meaning and effect of Section 10(i) thereof in Fulmer v. United States, 77 F.Supp. 927, 111 C.Cl. 591, and Mamlin et al. v. United States, 77 F.Supp. 930, 931, 111 C.Cl. 596, certiorari denied 335 U.S. 891, 69 S.Ct. 245.

In the Fulmer case, the claimant contended that a method means or system for camouflaging colored parachutes and signal systems was a component of aircraft within the meaning of Section 10(i) of the Air Corps Act of July 2, 1926, supra. In sustaining defendant's demurrer to the petition insofar as it attempted to base a cause of action on the statute mentioned and granting a motion to dismiss with respect to an alleged implied contract, this court held that the alleged invention was for a process or method rather than a design and, at most, related to an accessory for aircraft, not a component thereof.

In the Mamlin case, the plaintiffs' alleged device consisted of a transparent face protector for use by fire fighters which was claimed to be a "design * * * relating to aircraft" within the meaning of Section 10(i) supra. Plaintiffs contended that this section was not limited to an aircraft design

---

[1] "(i) Any person, firm, or corporation that shall complain that his, their, or its designs hereafter developed relating to aircraft or any components thereof are used or manufactured by or for any department of the Government without just compensation from either the Government or any other source, may within four years from the date of such use file suit in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture after date of this Act."

and designs of components of aircraft but covered all designs which relate to aircraft or components thereof, such as parts, equipment, matériel, devices affecting aircraft, and designs for aeronautical accessories such as life rafts, parachutes, anti-exposure suits, and fire-fighting equipment.

This court rejected that contention and said, 77 F.Supp. page 932, 111 Ct.Cl. page 599: "* * * It appears that Congress had in mind a design or designs relating to a new type of aircraft or to improved designs for one or more features of a particular type or types of aircraft or to one or more of the components thereof. * * *"

And further, 77 F.Supp. on page 932, 111 Ct.Cl. on page 600: "* * * Section 10 (i) was dealing with aircraft and essential elements or parts thereof, and there is a well-recognized distinction between aircraft and components thereof and accessories therefor. An aeronautical accessory is not an essential or necessary element or part of an airplane. An accessory is an article or device which may accompany a complete airplane and contribute in a secondary way to the convenience or effective use of the aircraft but which is not essential."

In the light of these decisions, we now consider whether a bombsight is a component part of a new type of aircraft, the bombing plane, or merely an accessory.

The first and earliest types of aircraft were designed primarily for the purpose of flying. No consideration of speed, sustained flight, passenger load or special use for special purpose was made. As the knowledge of aerodynamics developed and expanded, special kinds of aircraft were developed and placed into actual service—some adapted to peacetime commercial purposes and others to the various types of wartime activities. Thus, there are today different types of commercial planes, some designed for passenger service and comfort, others for the carriage of freight and heavy pay load, while others combine the two types of service. Each plane serves its particular purpose as each differs from the other in design, speed, range, weight, etc. Accordingly, what might be an accessory of a passenger plane might be a component part of a freight carrying plane and vice versa.

A close analogy is found in the development of aircraft for wartime activities where special types of planes have been developed for special kinds of service. Thus, we find the transport plane for transporting personnel and supplies of all kinds, the pursuit ship which pursues other ships and otherwise exemplifies the name it bears, the fighter plane which is designed to do just what its name suggests, and the bomber, which like the others, is designed to personify its name.

Even the most elementary knowledge of aircraft design and aerodynamics would justify the conclusion that these various planes are as different in design and construction as the services they perform. Further, that what might be deemed an accessory or a component part of any particular type of plane would depend upon the purpose for which the aircraft was primarily designed.

The defendant insists that a bombsight is no more a component of aircraft than a parachute or an aircraft safety appliance. With this contention we cannot agree.

A bombsight is a most essential element or part of a bombing plane and contributes in a primary way to the effective use of the aircraft and is most essential to its full function and efficiency.

As the Fulmer and Mamlin cases, supra, were the first considered by this court involving accessories, this is the first case to come before us involving a component of aircraft. All of the tests previously laid down by us for the determination of a component as distinguished from an accessory are met in the instant case.

While it is true that aerial bombs can be dropped from any type of aircraft, the most effective bombing can result only from the dropping of bombs from a special type of aircraft designed for such purpose carrying a bombsight, the use of which directs not only the bombs but the plane itself. When a bombing plane is on a bombing mission, even the pilot of the plane takes direction from the bombardier who in turn ob-

tains his information as to sped, wind, drift, altitude, etc., from a most scientific instrument known as the "bombsight."

As a rifle would be hopelessly ineffective without a sight, as a gun without its aiming mechanism, so would a bomber without its bombsight.

A bombsight is considerably more than a convenience or an accessory contributing only in a secondary way to a bombing plane—it is a component part thereof, and, as has been recognized for many years, it is essential to the most effective use of the bombing plane where engaged in bombing operations. We do not think the statute should be so narrowly construed as to exclude designs such as we have here.

Thus, the plaintiff's first cause of action falls squarely within the provision of Section 10(i) of the Air Corps Act, supra, and the defendant's demurrer thereto is accordingly overruled.

While the demurrer was not extended to plaintiff's "Second Cause of Action" under the Act of 1910, 35 U.S.C.A. § 68 [now 28 U.S.C.A. § 1498], for unlicensed use of his inventions by the United States and compensation therefor, it appears to us that the allegations of the petition are sufficient to establish a cause of action on that ground also.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.