Whitaker, Judge,
delivered the opinion of the court:
By chapter 29, subchapter A, of the Internal Revenue Code of 1989, as amended, there were levied manufacturers’ excise taxes on the sale of tires and tubes, toilet preparations, automobiles, radio receiving sets, mechanical refrigerators, lubricating oils, gasoline, etc. By subchapter B there were levied import taxes on certain articles. Subchapter C dealt with general administration.
Section 3443 of subchapter C, under “General Administrative Provisions,” gave a credit or refund against the taxes levied on sales by a manufacturer or producer, “in the amount of any tax under this chapter which has been paid with respect to the sale of any article (other than a tire, inner tube, or automobile radio taxable under section 3404) purchased by him and used by him as material in the manufacture or production of, or as a component part of, an article with respect to which tax under this chapter has been paid * *
Plaintiff manufactures automobiles. In their manufacture, it uses gasoline and lubricating oils, on which taxes have been paid. It sues for a refund of the amount thereof.
The stipulation of facts, which we have substantially adopted as our findings of fact, shows that in the manufacture of an automobile it is necessary to use gasoline “to test engines,” “to propel the motor vehicles in the later stages of manufacture and testing,” and “to propel intraplant lift trucks or jitneys which move vehicle parts from stock to assembly line.” Also, in the manufacturing process lubricating oils are used “to spray on pistons and rings,” “to brush on crankshaft bearings,” “to lubricate engines during engine test,” “to fill crankcases of tested engines,” “to lubricate transmissions during transmission test,” “to fill tested *823 transmissions,” “to fill rear-axle assemblies,” “to fill steering-gear assemblies,” “to fill carburetor air cleaners,” “as a drawing compound in stamping sheet metal vehicle parts,” “to lubricate manufacturing machinery,” and “to lubricate intraplant lift trucks or jitneys which move vehicle parts from stock to assembly lines.”
Plaintiff seeks a refund of the taxes paid on gasoline and lubricating oil used for the above purposes. It is entitled to this refund if the gasoline and oil can be said to have been “used by him as material in the manufacture or production of, or as a component part of” the automobiles.
Without question they were materials used in the manufacture of the automobile; but were they such materials as were in the mind of Congress when section 3443 was enacted?
The purpose of section 3443 was to avoid double taxation. If a part of the article sold had already been taxed, it would be double taxation to levy a tax measured by the sales price of the entire article, unless credit was given for the tax already paid on a part of it. But the gasoline and oil used for testing, in spraying the pistons and rings, in propelling intraplant lift trucks, and in lubricating manufacturing machinery, were no part of the automobile sold. They had been consumed in the manufacturing process.
It is true that their cost was taken into account in fixing the sales price, but so was the cost of labor, the salaries of executives, advertising, upkeep of plant and machinery, etc. These things, however, were not a part of the thing sold.
The only oil that could be said to have been sold was the oil left in the engine and other parts when the finished automobile was sold. This probably was taken into account in fixing the sales price. At least, for the sales price the purchaser got the car with this oil in it. We are of opinion that the manufacturer is entitled to a credit for the amount of the oil in the automobile when sold. This was the oil “to fill crankcases of tested engines,” “to fill tested transmissions,” “to fill rear-axle assemblies,” and “to fill carburetor air cleaners.” Cf. Estoppey v. United States, 113 C. Cls. 294.
We are of the opinion that the oil used for other purposes, and the gasoline, were not “used by him [the manufacturer] *824 as material in the manufacture or production of, or as a component part of” the automobile. Component parts were sold with the automobile, and any material that went into its construction were sold with it; but things that were consumed in the manufacturing process were not sold.
Many materials were used in the manufacture of the automobile, riveting machines, belts and pulleys, wrenches, hammers, oil and gasoline — various things, but they were not a part of the thing sold. A manufacturer, under section 3448, was entitled to credit for the tax he had paid on a component part, as a battery, the heater, the radio, the air conditioner, the rear mirror, the windshield wiper, because they were parts of the thing sold. The “materials” of which section 3443 speaks, by analogy, must also have been a part of the thing sold, as distinguished from the materials used in the manufacturing process.
We are aware that the Court of Appeals for the Second Circuit, in a per curiam opinion in Western Cartridge Co. v. Smith, 121 F. 2d 593, took a contrary view with respect to cartridges used in testing firearms, but we respectfully disagree.
The total tax paid on the oil in the automobiles when they were sold and which was sold with them, for the year 1946 was $107,505.02; for 1947 was $135,769.92; and for 1948 was $138,378.33. Plaintiff is entitled to recover the total amount of $381,653.27, plus interest as provided by law. Judgment will be entered accordingly.
It is so ordered.
LaraMORe, Judge; MaddeN, Judge; LittletoN, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the stipulation of facts entered into between the parties, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff at all times hereinafter mentioned was and now is a corporation organized and existing under the laws of the State of Delaware with its office and principal place of *825 business at 341 Massachusetts Avenue, Detroit 31, Michigan, and engaged in the business of manufacturing automotive products.
2. Plaintiff is the successor in interest of the assets, properties and business of its wholly-owned subsidiary, Chrysler Motors of California, a California corporation, which was completely liquidated and dissolved on October 20, 1947. Chrysler Motors of California paid to various vendors part of the manufacturers’ excise taxes, refund of which is sought in this suit. Plaintiff, as its successor, is entitled to receive the overpayment, if any, of manufacturers’ excise taxes paid by Chrysler Motors of California. “Plaintiff,” as used elsewhere in this opinion and findings of facts with respect to the period prior to October 21,1947, shall be deemed to include Chrysler Motors of California.
3. During the calendar years 1946, 1947 and 1948, plaintiff purchased gasoline and lubricating oils from numerous vendors and paid to these vendors for Federal manufacturers’ excise taxes imposed by sections 3412 and 3413 of the Internal Revenue Code respectively, amounts as follows:

1946 1947 194S Total

$274,546.16 $843,450.20 $350,750.94 $968,747.30
4. Said manufacturers’ excise taxes on gasoline and lubricating oils collected from plaintiff by its vendors were paid to Collectors of Internal Revenue by said vendors during the period February 1, 1946 to January 31, 1949.
5. Plaintiff, a large automotive manufacturer, operates a number of Divisions engaged in the manufacture of passenger cars and trucks. Plymouth, Dodge, DeSoto and Chrysler are the principal Divisions. In the manufacture of automobiles approximately 15,000 items are assembled into the following major units which in turn are assembled together to complete one vehicle: (1) Motor (including accessories); (2) Clutch; (3) Transmission; (4) Universal joints and propeller shaft; (5) Front axle assembly; (6) Rear axle assembly; (7) Steering-gear assembly; (8) Frame assembly; (9) Brake system; (10) Wheels; (11) Tires; (12) Body assembly (including trim, glass, hardware, sheet metal, plastics, rubber and paint).
*826 6. The gasoline referred to in finding 3, the tax on which recovery is sought, was used by plaintiff in the following manners:
a. To test engines.
After engines are completely assembled with accessories, they are carried by monorail conveyor to the motor block and performance test stands. There they are transferred to individual stands and connected to electric dynamometers for the initial run and performance test. Before starting the engine, connections for water, fuel and oil are made. The gasoline supply line is connected to the carburetor. The engine is then run for a period of fifteen minutes at varying speeds. In the course of this test an average of %0 gallon of gas is consumed per engine.
After completion of vehicle assembly, but prior to final inspection and approval, the car is given a roller test, that is, the car is operated just as it would be on a highway, but the rear wheels are placed on rollers so that the car remains stationary. In this test the inspectors are primarily concerned with the proper functioning of the engine, fluid coupling, clutch, transmission, propeller shaft and rear axle. Gasoline is also consumed in this test.
b. To propel the motor vehicles in the later stages of manufacture and testing.
After completion of the roller test the car is driven from the assembly building to the yard and then to the final inspection and repair building. In this driving test the steering-gear and the general operability of the car are again carefully tested. In the tests conducted in the final inspection and repair building the inspectors are primarily concerned with paint condition, hood fits, door fits, body condition, body trim and other external appointments. Some cars need adjustments and if so, they are driven to another point for these adjustments to be made. When the car receives its final approval the manufacturing operation is completed and the car is driven to one of the two points from which shipment of the completed product emanates. The car is operating under its own power during these movements and gasoline is consumed.
*827 c. To propel intraplant lift trucks or jitneys whicb move vehicle parts from stock to assembly line.
7. The lubricating oils referred to in finding 3, the tax on which is sought to be recovered, were used by plaintiff in the following manners:
a. To spray on pistons and rings.
In the assembly of the engine, after a motor cylinder block has been machined, it is cleaned and then aluminum pistons are fitted to the cylinder bores to approximately .0005" clearance. Before the pistons are fitted to the cylinder bores, the piston rings and rods are assembled to the pistons and the unit is sprayed with a film of motor oil to avoid oxidation or rusting.
b. To brush on crankshaft bearings.
Before the assembly of the crankshaft to the motor cylinder block a film of oil is applied to the highly finished babbitt bearings before inserting the crankshaft. In the same assembly a film of oil is applied to the crankshaft pins before assembling the connecting rods.
c. To lubricate engines during engine test.
In connection with the initial run and performance test referred to in finding; 6, an oil connection must be made to the completely assembled engine. A centralized oiling system is provided to supply oil to each engine on test and directly aids in removing any abrasive material which becomes free when the engine is heated. One oil inlet pipe is connected to the engine oil header so that oil passes directly to all rotative bearings (crankshaft and cam shaft) before spraying freely to all internal surfaces of the cylinder block. During the early stages of the engine test the oil is circulated through the engine by the pumps on the centralized oiling system. In the later stages, the oil pan drain hole is plugged to permit oil to be raised to normal operating level. At that point oil is circulated by the engine’s own oil pump and'not through the central circulating system. On the completion of the test the oil plug is removed to permit the oil to drain back into the central circulating system. With the test some oil is consumed or otherwise lost and a quantity of oil adheres to and is retained in the oil passages, oil filter and oil pan of the engine.
*828 d. To fill crankcases of tested engines.
After the engine has completed the initial motor block and performance test, it is placed on a monorail conveyor for additional assembly operations. At this point motor oil is added to the crankcase of the engine to protect the crankcase from injury and to permit the engine to function during additional manufacturing operations and tests, including the roller and driving tests. This oil remains with the vehicle into the hands of the purchaser.
e. To lubricate transmissions during transmission test.
During the assembly of a transmission small quantities of oil are used on the parts. After the transmission unit is completely assembled it is tested. In the test oil is circulated through the transmission by a separate oil circulating system. The oil serves to protect all bearings and parts during the test run and to remove any foreign dirt or injurious metal particles that may be present in the transmission. After the test the transmissions are drained of oil. A quantity of oil is lost, however, from the circulating system due to the fact that a portion of the oil adheres to all the wetted surfaces of the transmission parts.
f. To fill tested transmissions.
After the transmission is tested, it is assembled to the engine, after which oil is added to the transmission. This is necessary so that when the transmission has been assembled to the chassis and is further tested, including the roller and driving tests, it will operate properly and will not suffer injury. This oil remains with the vehicle and passes into the hands of the purchaser.
g. To fill rear-axle assemblies.
After the rear-axle is assembled, oil is added to it for test purposes, for operability and for protection from injury. This oil remains in the rear-axle assembly during all further stages of its assembly as part of a completed automobile and passes into the hands of the purchaser of the vehicle.
h. To fill steering-gear assemblies.
After the steering-gear is assembled, but prior to its assembly as part of a completed automobile, oil is added for test purpose, for operability and to protect the steering-gear from *829 injury. This oil remains with the vehicle and passes into the hands of the purchaser.
i. To fill carburetor air cleaners.
Plaintiff uses an oil bath air cleaner to protect engines from dirt. This oil insures protection against dust and dirt entering the engine through the carburetor when the vehicle is operating in dusty areas. This oil is added before final assembly and remains with the vehicle and passes into the hands of the purchaser.
j. As a drawing compound in stamping sheet metal vehicle parts.
Many parts of an automobile are made from sheet steel and steel tubes. These sheets and tubes have been formed into the proper shape by power presses. Where these operations are difficult it is necessary to add drawing compounds to the metal sheets to avoid tear or injury to the metal.
k. To lubricate manufacturing machinery.
l. To lubricate intraplant lift trucks or jitneys which move vehicle parts from stock to assembly lines.
8. In this suit the gasoline and lubricating oils referred to in finding 8 and not used as stated in findings 6 and 7 are not claimed to be exempt from manufacturers’ excise tax and the taxes thereon are not included in the taxes for which recovery is sought.
9. It is the function of the plaintiff’s Engineering Division to set up complete specifications and bills of material for every part required to make a finished vehicle. Each individual item is assigned a part number which identifies that part. The compilation of all the part numbers for a complete vehicle is known as a “Parts List.” The lubricating oils referred to in subparagraphs (d), (f), (g) and (h) of finding 7 herein are assigned part numbers, blueprints, Material and Process Standards and are included in plaintiff’s Parts List in the same manner as are steel, aluminum, bronze, chromium, rubber, glass, wool, leather, plastic parts and other solid materials.
10. The lubricating oils referred to herein perform two functions in the operation of an automobile. These functions are:
*830 (a) To provide adequate lubrication and to reduce friction to a minimum, and
(b) To carry away the beat developed in the operation of moving parts.
In the crankcase, transmission, rear axle and steering-gear assemblies only a thin film of oil actually performs a lubricating function at any given moment. During operation the bulk of the oil as being circulated to conduct heat away from the contact surfaces and to dissipate it through the air-cooled enclosure walls.
11. The automotive products manufactured by plaintiff, in the manufacture of which the gasoline and lubricating oils referred to in findings 6 and 7 were used, were sold by the plaintiff, and the manufacturers’ excise tax imposed by section 3403 of the Internal Eevenue Code has been paid with respect to said automotive products.
12. On November 21,1949, plaintiff filed with the Collector of Internal Eevenue, Federal Building, Detroit, Michigan, three claims for refund of the manufacturers’ excise taxes paid with respect to the gasoline and lubricating oils referred to in findings 6 and 7 in the amounts of $257,222.88, $324,851.16 and $331,092.94. The claims were on Treasury Department Form 843 and dealt with the taxes collected from the plaintiff by its vendors during the years 1946, 1947 and 1948 respectively.
13. By registered mail notice dated August 1, 1950 each of said claims for refund was rejected in full by the Commissioner of Internal Eevenue.
14. Taxes in the following amounts have been paid on the gasoline and oil used for the purposes set out below:

Uses me 1947 1948

All uses specified in findings 6 and 7_ $257, 222. 88 $324, 851. 16 $331, 092. 94
Gasoline to test engines— finding 6 (a)_ 7, 918. 09 9, 999. 89 10,192. 16
Gasoline to propel vehicle in later stages of manufacture — finding 6 (b) — 23, 147. 49 29, 233. 36 29, 794. 91
Gasoline to propel trucks, jitneys — finding 6 (c)_ 12, 098. 74 15, 279. 70 15, 573. 22

*831
Uses 1946 1947 1948

Oils to spray pistons and rings for further manufacture — finding 7 (a)__ 358. 82 453. 16 462. 03
Oils to brush on crankshaft bearings for further manufacture— finding 7 (b)_ 816. 16 1, 030. 75 1, 050. 51
Oils to lubricate engines during engine test— finding 7 (c)_ 8, 683. 33 10, 966. 33 11,177. 12
Oils to fill crankcase of tested engines for further manufacture— finding 7 (d)_ 58, 392. 42 73, 744. 79 75,161. 60
Oils to lubricate transmissions during transmission test — finding 7 (e)_ 1, 080. 08 1, 364. 05 1, 390. 31
Oils to fill tested transmissions for further manufacture — finding 7 (f) - - 18, 518. 25 23, 387. 01 23, 836. 51
Oils to fill rear axle assemblies for further manufacture — finding 7 (g)__ 21, 408. 66 27, 037. 36 27, 556. 74
Oils to fill steering column assemblies for further manufacture — finding 7 (h)--6, 535. 52 8, 253. 82 8, 412. 37
Oils to fill carburetor air cleaners for further manufacture — finding 7 (i)-2, 650. 17 3, 346. 94 3, 411. 11
Oils as a drawing compound in stamping sheet metal vehicle parts— finding 7 (j)-1, 801. 85 2, 275. 58 2, 319. 45
Oils to lubricate manufacturing machinery — finding 7 (k)-92, 577. 34 116, 917. 51 119, 164. 04
Oils to lubricate intraplant lift trucks or jitneys which move vehicle parts from stock to assembly line — finding 7 (i)-1, 235. 96 1, 560. 91 1, 590. 86
15. In its cost accounting practices the excise taxes here in controversy as plaintiff has included an element in the cost *832 of manufacture of tbe various automotive products in the manufacture of which the gasoline and lubricating oils referred to in findings 6 and 7 had been used.
16. Plaintiff has not assigned or transferred any part of the claims for refund, referred to in finding 12 above, upon which this suit is based.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that it recover of and from the United States three hundred eighty-one thousand six hundred fifty-three dollars and twenty-seven cents ($381,653.27), plus interest as provided by law.