## USAIR, INC. v. FAULKNER

[126 N.C. App. 501 (1997)]

USAIR, INC., Plaintiff v. JANICE H. FAULKNER, Secretary of Revenue, in her official capacity, Defendant

No. COA96-730

(Filed 17 June 1997)

**Taxation § 139 (NCI4th)— sales and use taxes—commercial airline—seats and other equipment—not accessories**

Buyer furnished seats, galleys, other furnishings, electronic communications equipment and aircraft control devices installed in aircraft before delivery to a commercial airline were not "accessories" for purposes of the provision for the refund of sales and use taxes to interstate air carriers set forth in N.C.G.S. § 105-164.14(a) because the items were essential to and contributed to the primary operation of the commercial aircraft and the airline could not effectively provide passenger service and comfort without those items.

**Am Jur 2d, Sales and Use Taxes § 172.**

Appeal by plaintiff from order of summary judgment entered 17 April 1996 by Judge J.B. Allen, Jr., in Wake County Superior Court. Heard in the Court of Appeals 25 February 1997.

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Jasper L. Cummings, Jr., and Christopher T. Graebe, for plaintiff appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General George W. Boylan, for defendant appellee.*

COZORT, Judge.

In this case, taxpayer, a commercial airline, seeks a refund of sales and use taxes based on its contention that the property taxed— seats, galleys, other furnishings, electronic communication and aircraft control devices installed in aircraft before delivery to the airline—are not "accessories" as the term is used in the tax code. The North Carolina Department of Revenue contends that the items in question are accessories, thus reducing the refund due to taxpayer. At trial, the superior court entered judgment for the department. We disagree and reverse. The facts and procedural history follow.

Piedmont Aviation, Inc. (Piedmont), was a North Carolina Corporation organized in 1940 for the purpose of, among other

things, providing commercial airline service. Piedmont merged with USAIR, Inc. (taxpayer), in 1989. The "audited period" covers the period from 1 July 1983 through 30 June 1986. During that audited period, Piedmont placed into service six leased aircraft, which were manufactured by the Boeing Company, Inc. Piedmont paid to the North Carolina Department of Revenue (defendant) a use tax of $300.00 for each aircraft, as required by the North Carolina Revenue Code as it existed at that time.

During the same period, Piedmont purchased fourteen aircraft from Boeing and thirteen aircraft from Fokker Aircraft U.S.A., Inc. Piedmont paid to defendant a use tax of $300.00 for each purchased aircraft. Before delivery of either the leased or purchased aircraft, Piedmont ordered specific seats, galleys, and other furnishings, as well as electronic communications and other aircraft control devices. These items, known in the airline industry as "buyer furnished equipment," (BFE) were shipped directly to the manufacturer for installation on the airframe before the leased or purchased aircraft was delivered to Piedmont. With the exception of certain seats ordered for the Boeing 737-300 series of aircraft, all BFE items were ordered by Piedmont from vendors located outside of North Carolina.

Taxpayer applied for refunds from defendant pursuant to N.C. Gen. Stat. § 105-164.14(a) (1995), a special refund provision designed to fairly apportion sales and use taxes imposed on interstate air carriers, so that the carriers are taxed on the basis of the relative amount of the use of their commercial aircraft in North Carolina. Taxpayer timely claimed and received refunds of a portion of taxes paid pursuant to N.C. Gen. Stat. § 105-164.14 in the amount of $6,934,550.52. Defendant caused taxpayer's refund claims to be audited and determined that a portion of the refunds should be disallowed on the basis that the purchases of total "lubricants, repair parts and accessories" (LR & A) were understated for the purpose of the refund computation under N.C. Gen. Stat. § 105-164.14(a). Defendant classified seats, galleys and other furnishings, electronic communications equipment and other aircraft control devices as LR & A, thereby diminishing taxpayer's refund. Defendant issued to taxpayer a Notice of Tax Due in the amount of $238,971.80 including interest. On 7 July 1993 taxpayer paid $256,667.30 representing the amount of assessed taxes.

On 19 May 1994 taxpayer filed a complaint in Wake County Superior Court requesting the court to order defendant to refund to

taxpayer $256,667.30. Defendant answered, requesting dismissal of the action. On 4 October 1995 taxpayer filed a motion for summary judgment. Defendant filed a cross motion for summary judgment. On 17 April 1996 the trial court entered judgment holding, among other things, the BFE in question are accessories under the Sales and Use Tax Act and must be included in the computation of total LR & A for the purpose of the refund under N.C. Gen. Stat. § 105-164.14(a). From this judgment for defendant, taxpayer appeals.

Taxpayer first assigns error to the trial court's determination that the BFE are "accessories" for purposes of reducing the refund of sales and use taxes Piedmont paid for LR & A pursuant to N.C. Gen. Stat. § 105-164.14(a). We agree.

The term "accessory" as used in portions of the Sales and Use Tax Act applicable to this appeal was not defined by the Legislature in drafting the statutes, nor has this issue been addressed by the courts of this state. Therefore, as an issue of first impression we look to principles of statutory construction, the definition of accessory in different contexts and opinions from other jurisdictions.

We begin with the proposition that, "when there is doubt as to the meaning of a statute levying a tax, it is to be strictly construed against the State and in favor of the taxpayer." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202 (1974). "Conversely, a provision in a tax statute providing an exemption from the tax, otherwise imposed, is to be construed strictly against the taxpayer and in favor of the State." *Id.* (citing *Good Will Distributors v. Shaw, Comr. of Revenue*, 247 N.C. 157, 160, 100 S.E.2d 334, 336 (1957)). These rules are applicable, however, only when there is ambiguity in the statute. *Id.* at 219, 210 S.E.2d at 202.

> When the meaning of the statute is clear, there is no need for construction and the clear intent of the Legislature must be given effect by the courts.
>
> In the construction of any statute, including a tax statute, words must be given their common and ordinary meaning, nothing else appearing. Where, however, the statute, itself, contains a definition of a word used therein, that definition controls, however contrary to the ordinary meaning of the word it may be. The courts must construe the statute as if that definition had been used in lieu of the word in question. If the words of the definition, itself, are ambiguous, they must be construed pursuant to the

general rules of statutory construction, including those above stated.

*Id.* at 219-20, 210 S.E.2d at 202-03 (citations omitted).

The term "accessory" as defined by Webster's Third New International Dictionary (1971) means "a thing of secondary or subordinate importance." Our Supreme Court adopted this definition in *Duke Power Co. v. Clayton, Comr. of Revenue,* 274 N.C. 505, 511, 164 S.E.2d 289, 293 (1968), a case involving the sales and use tax. The question before the Court was whether a fly-ash precipitator was mill machinery or an accessory thereof, within the meaning of the sales and use tax. The Court stated that, "[a]ccessory, as defined by Webster's Third New International Dictionary (1964) is 'a thing of secondary or subordinate importance; an object or device that is not essential in itself but that adds to the beauty, convenience, or effectiveness of something else.' " *Id.*

Finding no North Carolina cases construing the term "accessory" as it relates to aircraft, we turn to other jurisdictions. In *Estoppey v. United States,* 83 F.Supp. 840 (Ct. Cl. 1949) the United States Court of Claims was presented with the question of whether certain drawings and designs of a bombsight were "designs relating to aircraft or any components thereof," within the meaning of the Air Corps Act of 2 July 1926. As to whether a bombsight is a component part of the bombing plane, or a mere accessory, the Court reasoned:

> The first and earliest types of aircraft were designed primarily for the purpose of flying. No consideration of speed, sustained flight, passenger load or special use for special purpose was made. As the knowledge of aerodynamics developed and expanded, special kinds of aircraft were developed and placed into actual service—some adapted to peacetime commercial purposes and others to the various types of wartime activities. Thus, there are today different types of commercial planes, some designed for passenger service and comfort, others for the carriage of freight and heavy pay load, while others combine the two types of service. Each plane serves its particular purpose as each differs from the other in design, speed, range, weight, etc. Accordingly, what might be an accessory of a passenger plane might be a component part of a freight carrying plane and vice versa.

\* \* \* \*

*A bombsight is a most essential element or part of a bombing plane and contributes in a primary way to the effective use of the aircraft and is most essential to its full function and efficiency.*

*Id.* at 842 (emphasis added). The Court ultimately held that, "[a] bombsight is considerably more than a convenience or an accessory contributing only in a secondary way to a bombing plane—it is a component part thereof, and, as has been recognized for many years, it is essential to the most effective use of the bombing plane where engaged in bombing operations." *Id.* at 843.

*Fulmer v. United States*, 77 F. Supp. 927 (Ct. Cl. 1948), also addressed the issue of the distinction between components and accessories. The Court held that parachutes could, at most, be regarded as aeronautical accessories and not as component parts of an aircraft. *Id.* at 929.

In *Mamlin v. United States*, 77 F. Supp. 930, *cert. denied*, 335 U.S. 891, 93 L. Ed. 428 (Ct. Cl. 1948), the court stated:

[T]here is a well-recognized distinction between aircraft and components thereof and accessories therefor. An aeronautical accessory is not an essential or necessary element or part of an airplane. An accessory is an article or device which may accompany a complete airplane and contribute in a secondary way to the convenience or effective use of the aircraft but which is not essential.

*Id.* at 932-33.

Defendant contends that taxpayer's purchasing the BFE from vendors separate from the airframe manufacturer tilts the scale in favor of classifying the property as accessories. We are not persuaded that the Legislature intended the source of the property to be the determinative factor. Rather, we are of the opinion that the essential nature of the property to the use of the aircraft is more important. Thus, we hold that the items in question, seats, galleys, other furnishings, electronic communication devices and other aircraft control devices, are not accessories because they are essential to and contribute to the primary operation of a commercial passenger aircraft. A commercial aircraft could not effectively provide passenger service and comfort without seats, galleys, furnishings and electronic and control devices. Even construing the statute strictly against tax-

payer, we hold that the buyer furnished equipment should not be classified as "accessories" pursuant to N.C. Gen. Stat. § 105-164.14(a). The trial court improperly granted summary judgment in favor of defendant. Taxpayer is entitled to judgment awarding the refund in question.

Because we reverse the ruling of the trial court for the aforementioned reasons, it is not necessary for us to address plaintiff's second assignment of error.

Reversed and remanded for entry of judgment for taxpayer.

Judges EAGLES and JOHN concur.