IN THE MATTER OF THE APPEAL OF CLAYTON-MARCUS COM-
PANY, INC., FROM ADMINISTRATIVE DECISION No. 114 OF
TAX REVIEW BOARD OF NORTH CAROLINA

No. 105

(Filed 11 December 1974)

**1. Appeal and Error § 3— review of constitutional questions**

The Supreme Court will not pass upon the constitutionality of a
statute unless necessary to determine the rights of the parties to the
litigation before it.

**2. Taxation § 23— construction of taxing statutes**

When there is doubt as to the meaning of a statute levying a tax,
it is to be strictly construed against the State and in favor of the
taxpayer; conversely, a provision in a tax statute providing an exemp-
tion from the tax, otherwise imposed, is to be construed strictly against
the taxpayer and in favor of the State.

**3. Statutes § 5; Taxation § 23— construction of taxing statutes — mean-
ing of words used therein**

In the construction of any statute, including a tax statute, words
must be given their common and ordinary meaning, nothing else ap-
pearing; where, however, the statute itself contains a definition of a
word used therein, that definition controls, however contrary to the
ordinary meaning of the word it may be.

**4. Taxation § 31— use tax — storage — purchase from retailer**

The mere keeping of fabrics used in swatch books in the store-
room of a furniture plant in North Carolina would not support the
assessment of a use tax on the fabrics where there is nothing in the
record to show that the fabrics were purchased from a retailer. G.S.
105-164.3(17).

**5. Taxation § 31— use tax — goods used outside the State**

There is no merit in the contention that G.S. 105-164.3(19), which
is part of the definition of taxable "use," should be construed as if
the concluding words, "used solely outside the State," read, "used by
the owner or purchaser solely outside the State."

**6. Taxation § 31— use tax — processing material into different product —
use outside the State**

A taxable "use" does not include a processing of material into a
different product, which resulting product is, itself, to be transported
outside the State and used outside the State exclusively, regardless of
who the user there may be. G.S. 105-164.3(18) and (19).

**7. Taxation § 31— material — exemption from use tax — sales promo-
tional material**

The exemption from the use tax provided in G.S. 105-164.13(8)
was not intended by the Legislature to apply, and does not apply,
to use of material by a manufacturer in the production of an article

intended for use by the manufacturer, itself, through its distribution to potential customers as sales promotional material.

**8. Taxation § 31— use tax — fabrics used in furniture manufacturer's swatch books**

A furniture manufacturer's use in North Carolina of fabrics in the production of swatch books of sample fabrics for distribution without charge to its potential customers, in or out of this State, is not exempted by G.S. 105-164.13(8) from the use tax imposed by G.S. 105-164.6; nevertheless, since the production of the swatch books is not a "use" of the fabrics within the definition of that word contained in G.S. 105-164.3(18) and (19), no tax thereon is imposed by G.S. 105-164.6.

APPEAL by Clayton-Marcus Company, Inc., from the decision of the Court of Appeals, reported in 23 N.C. App. 6, 207 S.E. 2d 795, *Baley, J.,* having dissented. The Court of Appeals affirmed the judgment of *Hobgood, J.,* at the 26 November 1973 Session of WAKE, which judgment affirmed the decision of the Tax Review Board sustaining the levying of a use tax by the Commissioner of Revenue. The facts are not in dispute.

Clayton-Marcus Company, Inc., is a manufacturer of furniture in Hickory, North Carolina. It purchases from suppliers thereof quantities of fabrics which it uses primarily in the manufacture of furniture for sale to its customers in this and other states. The Commissioner of Revenue concedes that the use of fabrics in the manufacture of furniture for sale is not, in itself, subject to the North Carolina Use Tax.

Clayton-Marcus produces at and distributes from its plant in Hickory swatch books for use by its sales representatives and by its customers (furniture dealers) in this and other states. No charge is made for such swatch books. The purpose for which they are used is to enable the prospective customer to see what fabrics are available, including the various colors thereof, and to place orders for furniture in which the desired fabric and color are used.

The swatch books are prepared in the plant of Clayton-Marcus by cutting from the roll of fabric the desired lengths, overedging each such cutting, sewing the smaller color swatches onto the master swatch for the fabric and then assembling the several master swatches and binding them into swatch books. At the time Clayton-Marcus purchased the fabrics, it was not possible to determine what part of the yardage in any roll or lot of fabric would be used in the manufacture and what part

would be used in the production of swatch books, the latter being a relatively small portion of the whole.

The Commissioner of Revenue does not contend that the fabric used in the production of swatch books which are sent to the sales representatives of Clayton-Marcus in other states for their own use therein is subject to the North Carolina Use Tax. On the other hand, Clayton-Marcus does not, on this appeal, contest the validity of the assessment of a use tax upon the purchase price of fabrics used in the production of swatch books distributed by Clayton-Marcus to either its sales representatives or its customers in this State for their use here. The Commissioner of Revenue assessed a use tax upon the purchase price of fabrics used in the production of swatch books sent, without charge, by Clayton-Marcus to its customers in other states for their use therein. It is the validity of that assessment ($4,385.67, plus interest, for the period beginning 1 January 1965 and ending 30 November 1967) which is presented by this appeal.

The Tax Review Board concluded that the fabrics used by Clayton-Marcus in the preparation of these swatch books is not, by reason of G.S. 105-164.13 (8), exempt from the use tax as an ingredient or component part of a manufactured article (the swatch book). The Board adopted the view of the Commissioner of Revenue that this exemption is intended to apply only to materials used in the manufacture of articles which, themselves, are intended by the manufacturer to be sold. It further concluded that G.S. 105-164.3 (19) has no application. This statute excludes from taxable uses the keeping or exercising power over tangible personal property for the original purpose of subsequently transporting it outside the State for use solely outside the State, and further excludes from taxable uses a use of tangible personal property for the purpose of processing, fabricating, manufacturing, attaching or incorporating it into other tangible personal property which is to be transported outside the State. Here, also, the Board adopted the view of the Commissioner of Revenue that this statute applies only when the use outside the State is to be made by such manufacturer himself.

Clayton-Marcus assigns each of these conclusions of the Board of Tax Review as error and also contends that to impose a tax upon the use of fabrics in the preparation of these swatch books would be to tax interstate commerce, in violation of the Commerce Clause, contained in Art. I, § 8, of the Constitution of the United States.

In re Clayton-Marcus Co.

*James H. Carson, Jr., Attorney General, and Myron C. Banks, Assistant Attorney General, for the North Carolina Department of Revenue, Appellee.*

*Kenneth D. Thomas for appellant.*

*The North Carolina Schoonbeck Company, a Michigan corporation, Amicus Curiae, by Hudson, Petree, Stockton, Stockton and Robinson.*

LAKE, Justice.

G.S. 105-164.6, in the part thereof pertinent to this appeal, provides:

> *"Imposition of tax.*—An excise tax is hereby levied and imposed on the storage, use or consumption in this State of tangible personal property purchased within and without this State for storage, use or consumption in this State, the same to be collected and the amount to be determined by the application of the following rates against the sales price * * * . "

Clayton-Marcus purchased fabric in rolls or bolts from sources of supply in and out of this State, received the fabric at its plant in this State, put and held it in its inventory for an unspecified time, removed it from inventory and cut from various rolls swatches or samples. These swatches it bound around the edges to prevent raveling. To each swatch showing material type it then attached smaller samples of the same fabric but of varying colors. It then compiled groups of such swatches, each group consisting of one swatch of each type of fabric, with color samples attached. It then bound each group into a swatch book. It distributed the swatch books to its sales representatives and to its customers for their use in soliciting and in placing orders for furniture with Clayton-Marcus.

If this course of dealing with the portion of fabric, which thus came to be included within the swatch books, constituted a "storage," a "use" or a "consumption" of such fabric, the assessment of the use tax here in question was proper, unless some other provision of the Sales and Use Tax Act, G.S. Chapter 105, Art. 5, requires a different conclusion, or the imposition of such a use tax would violate a provision of the Constitution of North Carolina or of the Constitution of the United States.

[1]   Clayton-Marcus contends that, assuming such handling and disposition of the fabric constitutes a "storage, use or consumption" of the fabric in this State, the imposition of an excise tax thereon would violate the Commerce Clause contained in Art. I, § 8, of the Constitution of the United States. We do not reach this question since we conclude that other provisions of the Sales and Use Tax Act exclude the Clayton-Marcus procedure in the compilation of the swatch books here in question from the operation of G.S. 105-164.6. This Court does not pass upon the constitutionality of a statute unless necessary to determine the rights of the parties to the litigation before it. *Nicholson v. Education Assistance Authority,* 275 N.C. 439, 168 S.E. 2d 401; *Carbide Corp. v. Davis,* 253 N.C. 324, 116 S.E. 2d 792; *State v. Blackwell,* 246 N.C. 642, 99 S.E. 2d 867; *Fox v. Commissioners of Durham,* 244 N.C. 497, 94 S.E. 2d 482; *State v. Jones,* 242 N.C. 563, 89 S.E. 2d 129.

[2]   It is well established that when there is doubt as to the meaning of a statute levying a tax, it is to be strictly construed against the State and in favor of the taxpayer. *Colonial Pipeline Co. v. Clayton, Comr. of Revenue,* 275 N.C. 215, 166 S.E. 2d 671; *Watson Industries v. Shaw,* 235 N.C. 203, 69 S.E. 2d 505; *Henderson v. Gill, Comr. of Revenue,* 229 N.C. 313, 49 S.E. 2d 754. Conversely, a provision in a tax statute providing an exemption from the tax, otherwise imposed, is to be construed strictly against the taxpayer and in favor of the State. *Good Will Distributors v. Shaw, Comr. of Revenue,* 247 N.C. 157, 100 S.E. 2d 334; *Henderson v. Gill, supra.* These rules come into play, however, only when there is ambiguity in the statute. When the meaning of the statute is clear, there is no need for construction and the clear intent of the Legislature must be given effect by the courts. *Colonial Pipeline Co. v. Clayton, supra; Watson Industries v. Shaw, supra.*

[3]   In the construction of any statute, including a tax statute, words must be given their common and ordinary meaning, nothing else appearing. *Duke Power Co. v. Clayton, Comr. of Revenue,* 274 N.C. 505, 164 S.E. 2d 289; *Supply Co. v. Maxwell, Comr. of Revenue,* 212 N.C. 624, 194 S.E. 117. Where, however, the statute, itself, contains a definition of a word used therein, that definition controls, however contrary to the ordinary meaning of the word it may be. *Johnston v. Gill, Comr. of Revenue,* 224 N.C. 638, 32 S.E. 2d 30. The courts must construe the statute as if that definition had been used in lieu of the word

in question. If the words of the definition, itself, are ambiguous, they must be construed pursuant to the general rules of statutory construction, including those above stated.

The Sales and Use Tax Act, in G.S. 105-164.3 (17), (18) and (19), expressly defines the words "storage" and "use," and provides that these shall be the meanings of these words "except where the context clearly indicates a different meaning." Thus, these terms, as used in G.S. 105-164.6, the section of the Act imposing the tax which the State here seeks to collect, must be given the meaning stated in those definitions, which are:

"(17) 'Storage' means and includes any keeping or retention in this State for any purpose [by the purchaser thereof], except sale in the regular course of business of tangible personal property purchased from a retailer.

"(18) 'Use' means and includes the exercise of any right or power or dominion whatsoever over tangible personal property by a purchaser thereof and includes, but is not limited to, any withdrawal from storage, installation, affixation to real or personal property, exhaustion or consumption of tangible personal property by the owner or purchaser thereof, but shall not include the sale of tangible personal property in the regular course of business.

"(19) 'Storage' and 'Use'; Exclusion.—'Storage' and 'use' do not include the keeping, retaining or exercising any right or power over tangible personal property [by the purchaser thereof] for the original purpose of subsequently transporting it outside the State for use thereafter solely outside the State and which purpose is consummated, or for the purpose of being processed, fabricated, or manufactured into, attached to or incorporated into, other tangible personal property to be transported outside the State and thereafter used solely outside the State."

The words above shown in brackets in paragraphs (17) and (19) of this section of the Act and the two commas in paragraph (17) were inserted by Chapter 1287 of the Session Laws of 1973, § 8, which amendment became effective 1 July 1974, after the events which the State contends constituted a taxable "storage, use or consumption" of the fabrics in the swatch books. These words and commas, therefore, have no bearing upon the decision of this appeal, except insofar as the enactment of such amend-

ment may cast light upon the intent of the Legislature as to the meaning of the definition with these words and commas omitted therefrom. See, *Colonial Pipeline Co. v. Clayton, supra,* at p. 227.

It will be observed that the definition of "storage" in paragraph (17), as it appeared at the time of the events here in question, contained no punctuation. As a result, the definition, as then written, is ambiguous. Are the words "of tangible personal property purchased from a retailer" part of the exception, thus limiting the exception, or are these words, themselves, a separate limitation of "storage," thus confining "storage" to a "keeping or retention * * * of tangible personal property purchased from a retailer?" Applying the rule that a statute imposing a tax is to be construed strictly against the State, we construe paragraph (17) to limit "storage" to the keeping or retention of personal property purchased from a retailer, thus excluding from the tax the storage of personal property not so acquired. The commas inserted by the amendment make this clear as to "storage" thereafter.

[4] In the present instance, there is nothing in the record to show that the fabrics used in the swatch books were purchased from a retailer. The natural inference is to the contrary. Consequently, mere keeping of these fabrics in the storeroom of the Clayton-Marcus plant in North Carolina would not support the assessment of the tax in question. The State does not contend that it would.

There is no such limitation upon the definition of "use" contained in paragraph (18). This paragraph, standing alone, is unambiguous and, if it stood alone, would clearly support the assessment of the tax. There was an exercise of dominion over the fabric, a withdrawal of it from storage, an affixation of the separate pieces of fabric to each other and to the binding in the compilation of the swatch book, and a consumption of the fabric by transforming it from a part of a roll of cloth into swatches and then into a book, just as a roll of paper is consumed by transforming it into a magazine, newspaper or book. See, Annot., 17 A.L.R. 3d 7, 108, 127.

However, paragraph (18) does not stand alone. Paragraph (19) is part of the definition of "use." It provides that "use"— i.e., a taxable use—does not include the exercise of any right or power over tangible personal property for the purpose of its being "processed, fabricated, or manufactured into, attached to

or incorporated into, other tangible personal property," which other property is, itself, "to be transported outside the State and thereafter used solely outside the State." An exclusion, by definition, from the taxable event should be strictly construed against the State under the above mentioned rules for the construction of a taxing statute. It is not an exemption of a favored activity, first brought within the meaning of the taxing provision. It is an original fixing of the outer boundaries of the activity to be taxed.

The fabric in question was processed, fabricated, manufactured and incorporated into a swatch book. It was not only attached to other pieces of fabric and to the binding, but its form was significantly changed in the same way that the leaves of a book, while still paper, have become a book in the ordinary thought of the beholder. See, Annot., 17 A.L.R. 3d 7, 108, 127.

[5, 6]  The argument of the State virtually concedes this, for the State's contention is that paragraph (19) should be construed as if the concluding words, "used solely outside the State," read, "used by the owner or purchaser [i.e., by the processor, fabricator or manufacturer] solely outside the State." That is, the State concedes that the use of fabric in compiling swatch books sent to and used by Clayton-Marcus' own sales representatives outside this State is not taxable. The State's difficulty is that this is not what the statute says. We perceive nothing in this definition of a taxable "use" which indicates such intent on the part of the Legislature. Both the plain, clear, ordinary meaning of the words of the statute and the rule that such a statute must be strictly construed against the State compel the conclusion that a taxable "use" does not include a processing of material into a different product, which resulting product is, itself, to be transported outside the State and used outside the State exclusively, regardless of who the user there may be.

Clayton-Marcus further contends that even if its handling of the fabric in the compilation of the swatch books here in question is a "use" of the fabric, within the meaning of the Sales and Use Tax Act, it is exempted from the use tax by G.S. 105-164.13, which provides:

"*Retail Sales and Use Tax.*—The sale at retail, the use, storage or consumption in this State of the following tangi-

ble personal property is specifically exempted from the tax imposed by this Article:

\*    \*    \*    \*

"(8) Sales of tangible property to a manufacturer which enters into or becomes an ingredient or component part of tangible personal property which is manufactured."

This provision of the Act, being an exemption from the tax otherwise imposed upon a "use" of tangible personal property, is to be construed strictly against the claim of exemption, insofar as its meaning is in doubt. The clear intent of this provision of the Act is that a sale of such property to a "manufacturer" is not taxed and neither is its use by the manufacturer as an ingredient or component of another "manufactured" article. The question is whether Clayton-Marcus is a "manufacturer" of the swatch books involved in this appeal.

The State contends that Clayton-Marcus is a manufacturer of furniture, so that its use of so much of the fabric as becomes a component part of furniture is not subject to the Use Tax, but that Clayton-Marcus is not a manufacturer of the swatch books, which it distributes to its customers, because it gives those swatch books to its customers without charge. That is, the State contends that one is not a manufacturer of articles which he makes for the purpose of distribution without charge, but is merely a consumer or user of the materials from which he makes such article. See, Annot., 17 A.L.R. 3d 7, 31.

In *Duke Power Co. v. Clayton, supra;* Justice Sharp, speaking for this Court, said:

"The word *manufacture* 'is not susceptible of an accurate definition that is all-embracing or all-exclusive, but is susceptible of many applications and many meanings. \* \* \* In its generic sense, "manufacturing" has been defined as the producing of a new article or use or ornament by the application of skill and labor to the raw materials of which it is composed.' 55 C.J.S. Manufactures, § 1, at 667 and 670 (1948). *Accord, Bleacheries Co. v. Johnson, Comm'r of Revenue* [266 N.C. 692, 147 S.E. 2d 177]. \* \* \* 'To make an article manufactured, the application of the labor must result in a new and different article with a distinctive name, character, or use,' *Inhabitants of Leeds v. Maine Crushed Rock & Gravel Co.,* 127 Me. 51, 56, 141

A. 73, 75 (1928). Thus, the usual connotation of *manufacturing* is the making of a new product from raw or partly wrought materials. * * *

"In *Anheuser-Busch Brewers Ass'n v. United States,* 207 U.S. 556, 28 S.Ct. 205, 52 L.Ed. 336 (1908) * * * The Supreme Court, speaking through Mr. Justice McKenna, said: 'Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary. * * * There must be a transformation; a new and different article must emerge, "having a distinctive name, character, or use." ' "

In our opinion, a swatch book or sample book is a new and different article from the fabrics in the respective samples contained therein. Thus, nothing else appearing, Clayton-Marcus has "manufactured" these swatch books. See, Annot., 17 A.L.R. 3d 7, 108, 127. In the construction of this statutory exemption, however, we should not press the word "manufactured" to its dryly logical extreme in disregard of the obvious purpose of the Sales and Use Tax Act. It is clear that the purpose of the Act, as a whole, is to impose a use tax (credited with a sales tax previously paid by the user) upon the consumer or user of tangible personal property in this State.

As the State points out in its brief, a lady who bakes a cake, or makes a child's dress, for the purpose of giving it to a neighbor is not a "manufacturer" within the meaning of G.S. 105-164.13 (8), notwithstanding the fact that, by the application of skill and labor to raw materials, she has created a new and different article. To hold otherwise would defeat the purpose of the Use Tax Act by giving the word "manufactured" a meaning which it does not have in its ordinary usage. The distinction between such a lady and the commercial bakery or the commercial dress shop is not, however, confined to the fact that she makes no charge for her product. We are not required, in this instance, to determine whether one who devotes a substantial plant to the preparation of food or clothing, which he donates to a charitable agency, should be deemed a "manufacturer" within the meaning of this exemption statute.

In the present instance, Clayton-Marcus is not distributing the swatch books in question to its potential customers as gifts. It is distributing them as advertising matter for the purpose of

soliciting sales of its furniture. It is as if Clayton-Marcus had purchased paper, ink and other printing materials from which it produced, in its own plant, catalogues, containing pictures and descriptions of furniture manufactured by it for sale, and had distributed such catalogues among potential customers for its furniture. The purpose of the producer of such catalogue or swatch book is thereby to increase its own business, not to benefit the recipient of the book. The catalogue or the swatch book is created for use (by distribution) by the producer itself as an instrumentality in the conduct of the producer's own business.

Decisions by the courts of our sister states are, in many instances, not fully persuasive for the reason that the language of the statutes construed by them is not the same as that used in G.S. 105-164.13 (8). For example, in many of the comparable statutes of other states, the exemption is expressly limited to the use of material as an ingredient or component part of another article which is "manufactured *for sale*." (Emphasis added.) Nevertheless, the decisions construing those statutes are somewhat indicative of the general legislative purpose in the enactment of a use tax.

Because of the general legislative purpose in the enactment of the Sales and Use Tax Act, the State contends G.S. 105-164.13 (8) should be construed as if the words "for sale" actually appeared at the end thereof. When material is used in the manufacture of another article (i.e., furniture), which manufactured product is intended for sale, a sales or use tax will ultimately be levied upon the purchaser or user, in North Carolina, of the manufactured article. Thus, to levy a tax upon the manufacturer's use of the raw material would be to tax twice the value added to the finished article by the incorporation therein of the material. On the other hand, there is no such double taxation where the material does not enter into an article which, itself, is designed for subsequent sale.

In *Iden v. Bureau of Revenue*, 43 N.M. 205, 89 P. 2d 519, a railroad company which purchased rough logs, which it cut, shaped and processed into cross-ties for use on its own tracks, was held to be a consumer of the logs, not a manufacturer within the meaning of the sales tax exemption. In *Union Oil Co. of California v. Johnson*, 58 Cal. App. 2d 636, 137 P. 2d 706, an oil refining company was likewise held to be a consumer, not a manufacturer, within the meaning of such a statute, with refer-

---

ence to that portion of lubricants made by it and used by it for the lubrication of its own machinery. In *State v. Bemis Bros. Bag Co.,* 267 Ala. 161, 100 So. 2d 736, a manufacturer of cotton cloth was held subject to tax on cotton bagging or tubing used by it as a container in which to ship cloth to its customers. In *Granite City Steel Co. v. Dept. of Revenue,* 30 Ill. App. 2d 552, 198 N.E. 2d 507, a steel company was held taxable upon its use of coal from which it made coke, which coke it then burned in its production of pig iron and steel, such coke not, itself, becoming an ingredient of the iron and steel produced.

[7]    We hold that the exemption provided in G.S. 105-164.13 (8) was not intended by the Legislature to apply, and does not apply, to use of material by a manufacturer in the production of an article intended for use by the manufacturer, itself, through its distribution to potential customers as sales promotional material.

[8]    Thus, we hold that the use, in North Carolina, by Clayton-Marcus of fabric in the production of swatch books for distribution, without charge, to its potential customers, in or out of this State, is not exempted by G.S. 105-164.13 (8) from the Use Tax imposed by G.S. 105-164.6. Nevertheless, since this is not a "use" within the definition of that word contained in G.S. 105-164.3 (18) and (19), no tax thereon is imposed by G.S. 105-164.6, and Clayton-Marcus is not liable for the tax assessed by the Commissioner of Revenue in this instance.

Reversed.