IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA21-692

Filed 17 October 2023

Carteret County, No. 20 CVS 436

JDG ENVIRONMENTAL, LLC d/b/a ADVANTACLEAN OF OKC, Plaintiff,

v.

BJ & ASSOCIATES, INC. d/b/a G.A. JONES CONSTRUCTION and THE COVES AT NEWPORT II ASSOCIATION, INC., Defendants.

Appeal by Defendant from order entered 26 July 2021 by Judge Clinton Rowe in Carteret County Superior Court. Heard in the Court of Appeals 25 May 2022.

> *Bell, Davis, & Pitt, P.A., by Joshua B. Durham, for Plaintiff-Appellant.*
>
> *Harvell & Collins, P.A., by Wesley A. Collins, for Defendant-Appellee BJ & Associates, Inc.*
>
> *White & Allen, P.A., by Brian Z. Taylor and Christopher J. Waivers, for Defendant-Appellee The Coves At Newport II Association, Inc.*

CARPENTER, Judge.

JDG Environmental, LLC ("Plaintiff") appeals from the superior court's grant of summary judgment in favor of BJ & Associates, Inc. ("Defendant BJ") and The Coves at Newport II ("Defendant Coves").[1] On appeal, Plaintiff asserts the superior court prematurely granted summary judgment because Plaintiff maintained an opportunity to obtain a certificate of authority until the beginning of trial. After

---

[1] We will refer to Defendant BJ and Defendant Coves collectively as "Defendants."

careful review, we agree with Plaintiff. Therefore, we vacate the superior court's order and remand this case for further proceedings.

## I. Factual & Procedural Background

On 13 September 2018, Hurricane Florence damaged Defendant Coves, a residential community in Newport, North Carolina. In order to clean and repair the community, Defendant Coves hired Defendant BJ. Defendant BJ hired Plaintiff, an Oklahoma LLC, as a subcontractor on the project. On 15 May 2020, after a dispute between Plaintiff and Defendant BJ concerning payment, Plaintiff initiated this lawsuit, asserting claims for breach of contract and unjust enrichment.

On 24 March 2021, Plaintiff filed a motion for summary judgment. During a hearing on the motion, Defendant BJ orally moved for summary judgment, arguing that judgment should instead be entered against Plaintiff because Plaintiff lacked a "certificate of authority," a statutory requirement for certain out-of-state companies to litigate in North Carolina courts. Indeed, Plaintiff had yet to obtain a certificate of authority. But on 2 June 2021, Plaintiff obtained a certificate of authority. In an order entered 26 July 2021, the superior court granted Defendant BJ's motion for summary judgment against Plaintiff. Plaintiff timely appealed from the superior court's order. Plaintiff has not challenged that it is was required to register as a foreign entity based on the facts of this case; thus, the trial courts findings and conclusions on this issue are binding on appeal.

## II. Jurisdiction

This Court has jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

### III. Issues

The issues on appeal are whether the superior court erred by: (1) granting Defendant BJ's motion for summary judgment; (2) failing to make requisite findings of fact in its order granting summary judgment; and (3) dismissing Plaintiff's action with prejudice.

### IV. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

### V. Analysis

On appeal, Plaintiff argues the superior court erred in granting Defendants' motion for summary judgment. Plaintiff asserts it had until trial to obtain a certificate of authority, so granting Defendants summary judgment prematurely deprived Plaintiff of its ability to do so. After careful review, we agree with Plaintiff: The superior court erred in granting Defendants summary judgment.[2]

---

[2] For this reason, we need not address Plaintiff's arguments concerning whether the superior court made the necessary findings of fact, or whether it was appropriate for the court to dismiss Plaintiff's case with prejudice.

Under N.C. Gen. Stat. § 57D-7-02:

> No foreign LLC transacting business in this State without permission obtained through a certificate of authority may maintain any proceeding in any court of this State unless the foreign LLC has obtained a certificate of authority prior to trial. An issue arising under this subsection must be raised by motion and determined by the trial judge prior to trial.

N.C. Gen. Stat. § 57D-7-02(a) (2021). In other words, a foreign LLC must obtain a certificate of authority before the trial of its case in North Carolina. *See* N.C. Gen. Stat. § 57D-7-02(a).

Here, Plaintiff is a foreign LLC transacting business in North Carolina. Therefore, Plaintiff is required to obtain a certificate of authority prior to trial. *See* N.C. Gen. Stat. § 57D-7-02(a). Because Plaintiff lacked a certificate of authority at the summary-judgment stage, the superior court granted Defendant BJ's motion for summary judgment, ending the litigation and Plaintiff's ability to obtain the requisite certificate.

Procedurally, summary judgment is "a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021). When summary judgment is granted on an issue, that issue is not tried: Receiving summary judgment has the same effect as winning at trial—but without going to trial. *See Kessing v. Nat'l Mortg. Corp.,* 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971) ("The purpose of summary judgment can be summarized as being a device to bring litigation to an early decision on the merits

without the delay and expense of a trial where it can be readily demonstrated that no material facts are in issue.").

The obligation to obtain a certificate of authority is statutory. *See* N.C. Gen. Stat. § 57D-7-02(a). In statutory interpretation, "[w]e take the statute as we find it." *Anderson v. Wilson*, 289 U.S. 20, 27, 53 S. Ct. 417, 420, 77 L. Ed. 1004, 1010 (1933). This is because "a law is the best expositor of itself." *Pennington v. Coxe*, 6 U.S. (2 Cranch) 33, 52, 2 L. Ed. 199, 205 (1804). And when examining statutes, words that are undefined by the legislature "must be given their common and ordinary meaning." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202–03 (1974).

Again, N.C. Gen. Stat. § 57D-7-02 states "[n]o foreign LLC transacting business in this State without permission obtained through a certificate of authority may maintain any proceeding in any court of this State unless the foreign LLC has obtained a certificate of authority *prior to trial*." N.C. Gen. Stat. § 57D-7-02(a) (emphasis added). The phrase "prior to trial" is not defined in the statute. *See* N.C. Gen. Stat. § 57D-7-02. Therefore, the phrase must be given its "common and ordinary meaning." *See In re Clayton-Marcus Co.*, 286 N.C. at 219, 210 S.E.2d at 202–03.

Given its ordinary meaning, "prior to trial" means exactly that: any time before the trial commences. Generally, a trial commences when a jury is empaneled. *Pratt*

*v. Bishop*, 257 N.C. 486, 504, 126 S.E.2d 597, 610 (1962).[3]  If the General Assembly wants "prior to trial" to mean something other than the generally understood meaning, it must say so.  *See Appeal of Clayton-Marcus Co., Inc.*, 286 N.C. at 219, 210 S.E.2d at 202.  Otherwise, we must "take the statute as we find it."  *See Anderson*, 289 U.S. at 27, 53 S. Ct. at 420, 77 L. Ed. at 1010.

We must also give the last sentence of N.C. Gen. Stat. § 57D-7-02 its ordinary meaning.  It reads as follows: "An issue arising under this subsection must be raised by motion and determined by the *trial judge* prior to trial."  N.C. Gen. Stat. § 57D-7-02(a) (emphasis added).  In North Carolina courts, the judge who hears a summary-judgment motion may not be the judge who presides over the trial.  In fact, this is quite common.  So, when the General Assembly says the "trial judge," we must assume they meant the judge presiding over the trial, and not the judge hearing a summary-judgment motion.  *See* N.C. Gen. Stat. § 57D-7-02(a); *In re Clayton-Marcus Co.*, 286 N.C. at 219, 210 S.E.2d at 202–03.

*Harold Lang Jewelers, Inc. v. Johnson* illustrates how this works in practice. 156 N.C. App. 187, 576 S.E.2d 360 (2003).  In *Harold Lang*, this Court wrestled with N.C. Gen. Stat. § 55-15-02(a) (2021), the corporation analogue to N.C. Gen. Stat. § 57D-7-02.  *Id.* at 189, 576 S.E.2d at 361; *see also* N.C. Gen. Stat. § 55-15-02(a) ("No

---

[3] Alternatively, in a bench trial, trial commences when a judge "begins to hear evidence."  *See State v. Brunson*, 96 N.C. App. 347, 350–51, 385 S.E.2d 542, 544 (1989).  Our analysis, however, remains the same because in a jury trial, the jury must be empaneled before it can hear evidence.  In other words, whatever is "prior to" a jury trial is also "prior to" a bench trial.

foreign corporation transacting business in this State without permission obtained through a certificate of authority under this Chapter . . . shall be permitted to maintain any action or proceeding in any court of this State unless the foreign corporation has obtained a certificate of authority prior to trial."). This Court stated: "On January 7, 2002, the case was called for trial. At that time, Johnson orally raised the defense of Lang's failure to obtain a certificate of authority and requested a hearing on that issue. After hearing evidence and argument, the district court granted the motion and dismissed Lang's action." *Harold Lang*, 156 N.C. App. at 188, 576 S.E.2d at 361. Lang lacked a certificate of authority, and this Court found "the trial court acted within its discretion when it addressed this dispositive issue as it did—prior to commencing trial . . . ." *Id.* at 189, 576 S.E.2d at 361. In *Harold Lang*, the *trial* judge properly ruled on the motion. *Id.* at 189, 576 S.E.2d at 361.

Likewise, this is how N.C. Gen. Stat. § 57D-7-02—the LLC analogue to N.C. Gen. Stat. § 55-15-02(a)—operates. Failure to obtain a certificate of authority "must be raised by motion and determined by the trial judge prior to trial." N.C. Gen. Stat. § 57D-7-02(a). Summary judgment is not necessarily determined by the trial judge. And the plain language of N.C. Gen. Stat. § 57D-7-02 requires the judge presiding over trial—not summary judgment—to determine whether the non-moving party obtained a certificate of authority. *See Harold Lang*, 156 N.C. App. at 188, 576 S.E.2d at 361; N.C. Gen. Stat. § 57D-7-02(a).

Here, Plaintiff could have obtained a certificate any time before the trial court

empaneled a jury—which includes time after the summary-judgment stage. *See Pratt*, 257 N.C. at 504, 126 S.E.2d at 610. And Plaintiff did so. Regardless, if Defendant BJ wanted a determination of whether Plaintiff obtained a certificate, it was required to raise a motion to the trial judge, not the summary-judgment judge. *See Harold Lang*, 156 N.C. App. at 188, 576 S.E.2d at 361; N.C. Gen. Stat. § 57D-7-02(a). Defendant BJ did not do so. Thus, granting Defendant BJ's summary-judgment motion deprived Plaintiff of its legislatively allotted time to obtain a certificate and infringed on the trial judge's statutory authority to determine Plaintiff's compliance with N.C. Gen. Stat. § 57D-7-02(a).

In *Leasecomm*, this Court also addressed N.C. Gen. Stat. § 55-15-02(a). *See Leasecomm Corp. v. Renaissance Auto Care, Inc.*, 122 N.C. App. 119, 122, 468 S.E.2d 562, 564 (1996). The *Leasecomm* Court did not directly address the issue before us: whether a court may grant summary judgment against a non-moving party because the non-moving party lacks a certificate of authority. The issue before the *Leasecomm* Court was whether a court could grant summary judgment to a moving party who lacked a certificate of authority. *See id.* at 121, 468 S.E.2d at 564. Regardless of the precise issue in *Leasecomm*, the Court's reasoning concerning N.C. Gen. Stat. § 55-15-02(a) supports our plain reading of N.C. Gen. Stat. § 57D-7-02(a). *See id.* at 122, 468 S.E.2d at 563. The Court held that under N.C. Gen. Stat. § 55-15-02(a), a moving party lacking a certificate of authority cannot prevail at summary judgment without first obtaining the required certificate of authority. *See id.* at 122, 468 S.E.2d at 564.

The *Leasecomm* holding is based on this premise: If a court grants summary judgment to a moving party that lacks a certificate of authority, the court prematurely assumes the moving party will gain a certificate before trial. *See id.* at 122, 468 S.E.2d at 564. Although our issue was not before the *Leasecomm* Court, it follows that if a lower court grants summary judgment because the non-moving party lacks a certificate of authority, the court also prematurely assumes the non-moving party *will not* gain one before trial. *See id.* at 122, 468 S.E.2d at 564. In other words, just as a moving party lacking a certificate of authority cannot prevail at summary judgment without first obtaining the required certificate of authority, a moving party cannot prevail at summary judgment merely because the non-moving party lacks a certificate of authority. *See id.* at 122, 468 S.E.2d at 564. This is correct because the trial judge must make the certificate-of-authority determination, and both scenarios take the determination away from the trial judge. *See id.* at 122, 468 S.E.2d at 564; *Harold Lang*, 156 N.C. App. at 188, 576 S.E.2d at 361; N.C. Gen. Stat. § 57D-7-02(a).

Here, when the superior court indicated in open court its intention to grant Defendant BJ's motion for summary judgment, the court prematurely assumed Plaintiff would not satisfy N.C. Gen. Stat. § 57D-7-02 before trial. *See Leasecomm*, 122 N.C. App. at 122, 468 S.E.2d at 564. And notably, before the court entered its written order granting Defendant BJ's motion for summary judgement on 26 July 2021, Plaintiff obtained a certificate of authority. So not only did the superior court not have the authority to grant summary judgment; it purported to do so after

Plaintiff actually obtained the requisite certificate of authority. *See* N.C. Gen. Stat. § 57D-7-02(a).

Accordingly, the superior court erred in granting Defendants summary judgment, rather than allowing the trial judge to make the certificate-of-authority determination. Such a judgment contradicts the plain text of the statute and our caselaw. *See* N.C. Gen. Stat. § 57D-7-02; *Leasecomm*, 122 N.C. App. at 122, 468 S.E.2d at 564; *Harold Lang*, 156 N.C. App. at 188, 576 S.E.2d at 361; *Pratt*, 257 N.C. at 504, 126 S.E.2d at 610.

## VI. Conclusion

We hold the superior court's entry of summary judgment against Plaintiff was improper. Therefore, we vacate the associated order and remand this case to the lower court. Because the court erred in granting summary judgment, we need not consider whether the requisite findings were made, or whether the case should have been dismissed with or without prejudice.

VACATED AND REMANDED.

Judge ARROWOOD concurs.

Judge MURPHY dissents in a separate opinion.

No. COA21-692 – *JDG Envtl., LLC v. BJ & Assocs., Inc.*

MURPHY, Judge, dissenting.

While I would also reverse the order of the trial court, I dissent from the Majority's interpretation of N.C.G.S. § 57D-7-02(a) and its conclusions as to the procedural steps that follow the order's reversal. The contention that N.C.G.S. § 57D-7-02(a) allows an uncertified business plaintiff until the moment the jury is empaneled to obtain a certificate of authority is not only impossible to reconcile with the plain text of the whole statute, but also squarely contradicts our holding in *Leasecomm*, conflicts with the official comment to the analogous certification statute regarding corporations, and undermines the statute's own function.

N.C.G.S. § 57D-7-02(a) reads as follows:

> No foreign LLC transacting business in this State without permission obtained through a certificate of authority may maintain any proceeding in any court of this State unless the foreign LLC has obtained a certificate of authority prior to trial. An issue arising under this subsection must be raised by motion and determined by the trial judge prior to trial.

N.C.G.S. § 57D-7-02(a) (2022). N.C.G.S. § 57D-7-02(a) thus contains two provisions pertaining to the timing of certification relative to trial: first, it makes maintaining a proceeding in this State contingent upon "obtain[ing] a certificate of authority prior to trial"; and, second, it provides that "[a]n issue arising under this subsection must be raised by motion and determined by the trial judge prior to trial." *Id.* As the Majority explains, both of these provisions must "be given their common and ordinary meaning." *Appeal of Clayton-Marcus Co., Inc.*, 286 N.C. 215, 219 (1974).

"Prior to trial" means any time before trial commences, and trial commences at the moment the jury is empaneled. *See Pratt v. Bishop*, 257 N.C. 486, 504 (1962). The Majority, without specific analysis, augments this explanation with the unstated proposition that an uncertified business Plaintiff is statutorily *entitled* to a period that runs until the jury is empaneled to receive the certificate. Therefore, as the Majority reads the statute, the trial court may not grant summary judgment against an uncertified business plaintiff until the moment the jury is empaneled. And, using the same interpretation, the plain meaning of the requirement that "[a]n issue arising under [N.C.G.S. § 57D-7-02(a)] must be raised by motion and determined by the trial judge prior to trial" is that the window of time allotted to trial judges to rule on a motion concerning a certification issue is until the moment the jury is empaneled. N.C.G.S. § 57D-7-02(a) (2022).

This interpretation results in a total impasse: the Majority's reading of the statute makes it impermissible for the trial court to *ever* rule on a motion concerning a business plaintiff's lack of certification. Summary judgment, it holds, is rendered "prematurely" if entered against a plaintiff before the moment the jury is empaneled. *See supra.* Likewise, the trial court is statutorily stripped of its ability to render any such judgment the moment the jury is empaneled. Following the Majority's logic to its necessary end, the result is a totally unenforceable statutory scheme.

Perhaps realizing the absurdity of this reading, we have, on multiple occasions in the past, permitted trial courts to enter summary judgment against an uncertified

business plaintiff prior to trial. In *Harold Lang Jewelers, Inc. v. Johnson*, for example, we affirmed the dismissal of an action, prior to trial, by a corporation that failed to satisfy the analogous certification requirement arising under N.C.G.S. § 55-15-02(a):

> [The defendant] argued that [the uncertified corporation] could not sue in a North Carolina court because [it] was transacting business in the state without a certificate of authority to do so. The trial court agreed and dismissed the suit prior to trial.
>
> . . . .
>
> [The corporation] contends that the trial court erred when it dismissed the action, arguing that the court should have continued the case to permit [it] to obtain the requisite certificate of authority. The applicable statute, [N.C.G.S.] § 55-15-02, does not specify the procedure in the event of failure to obtain a certificate of authority. The statute simply indicates that an action cannot be maintained unless the certificate is obtained prior to trial. [N.C.G.S.] § 55-15-02(a). [The corporation] has not cited, nor have we found, a case where a continuance has been granted by a court in these circumstances. Moreover, [the corporation] was aware that [the defendant's] motion was pending and could have obtained the certificate in the year and a half that passed between the filing of the motion and the court's dismissal of the case. In the absence of statutory or other authority dictating a continuance, we hold that the trial court acted within its discretion in dismissing the action.

*Harold Lang Jewelers, Inc. v. Johnson*, 156 N.C. App. 187, 188, 192, *disc. rev. denied*, 357 N.C. 458 (2003); *see also* N.C.G.S. 55-15-02(a) (2022) ("No foreign corporation transacting business in this State without permission obtained through a certificate of authority under this Chapter or through domestication under prior acts shall be

3

permitted to maintain any action or proceeding in any court of this State unless the foreign corporation has obtained a certificate of authority prior to trial. An issue arising under this subsection must be raised by motion and determined by the trial judge prior to trial."). Moreover, in *Leasecomm Corp. v. Renaissance Auto Care, Inc.*, we reversed the determination of a trial court that denied a motion for summary judgment against an uncertified corporate plaintiff under the same statute:

> Defendants argue that the trial court erred in granting plaintiff's summary judgment motion because plaintiff lacked authority to maintain an action in North Carolina to enforce the foreign judgment. We agree.
>
> . . . .
>
> [The] plaintiff had no authority to maintain an action to enforce its foreign judgment in North Carolina because [the plaintiff's assignor] has never been granted authority to do business here . . . . Accordingly, we hold that the trial court erred in granting summary judgment for plaintiff and denying defendant's summary judgment motion.

*Leasecomm Corp. v. Renaissance Auto Care, Inc.*, 122 N.C. App. 119, 121-22 (1996).

The Majority cites *Leasecomm* for the proposition that, "[i]f a trial court grants summary judgment to a moving party that lacks a certificate of authority, the trial court prematurely assumes the moving party will gain a certificate before trial"; and, by extension, that "if a trial court grants summary judgment because the non-moving party lacks a certificate of authority, the trial court prematurely assumes the non-moving party *will not* gain one before trial." Neither of these supposed holdings is apparent from the face of *Leasecomm*, and the attempt to extrapolate them from the

opinion obscures its actual, unambiguous holding: that a business plaintiff seeking to register a foreign judgment in North Carolina should, prior to trial, have summary judgment rendered *against* it if it fails to comply with relevant certification requirements. *Leasecomm*, 122 N.C. App. at 122. The Majority's contention that "[t]he *Leasecomm* Court did not directly address . . . whether a court may grant summary judgment against a non-moving party because the non-moving party lacks a certificate of authority" obfuscates the fact that the panel addressing *Leasecomm* treated the grant and denial of summary judgment as two sides of the same legal issue, and its holding is no less binding as to the former than it is the latter.

Similar problems exist with its reading of *Harold Lang*. The Majority cites *Harold Lang* for its position that the incorrect official ruled on Defendant's motion and purportedly as an example of how its own interpretation operates in practice, *see supra*, but *Harold Lang* is fully irreconcilable with its holding. Despite directly quoting *Harold Lang*'s holding that "the trial court acted within its discretion when it addressed this dispositive issue . . . prior to commencing trial[,]" *Harold Lang*, 156 N.C. App. at 189, the Majority's interpretation of N.C.G.S. § 57D-7-02(a) would necessarily dictate that a trial court may *not* dismiss an uncertified business plaintiff's case prior to trial and that the trial court has no discretion to do so. *See supra* ("[W]hen the [S]uperior [C]ourt indicated in open court its intention to grant Defendant BJ's motion for summary judgment, the court prematurely assumed Plaintiff would not satisfy [N.C.G.S.] § 57D-7-02 before trial. . . . [N]ot only did the

5

[S]uperior [C]ourt not have the authority to grant summary judgment; it purported to do so after Plaintiff actually obtained the requisite certificate of authority."). With both *Harold Lang* and *Leasecomm*, the Majority's attempts to harmonize our precedent with its holding misses the forest for the trees, passing over core procedures and applications of law that contradict its interpretation of N.C.G.S. § 57D-7-02 in favor of magnifying minutiae.

Neither our caselaw nor the meaning of the statute as a whole are reconcilable with the Majority's holding. Neither still can the Majority's holding account for the procedures described in the official comment to N.C.G.S. § 55-15-02, which allow an *optional* stay of proceedings in the event that a foreign corporate plaintiff is deemed to require certification under circumstances analogous to those in N.C.G.S. § 57D-7-02. *See* N.C.G.S. § 55-15-02 (2022) (official comment) ("[S]ection 15.02(c) authorizes a court to stay a proceeding to determine whether a corporation should have qualified to transact business and, if it concludes that qualification is necessary, it may grant a further stay to permit the corporation to do so."). If uncertified business plaintiffs were truly entitled to wait until trial to receive a certificate of authority, a stay of proceedings in such circumstances would be mandatory, not permissive. Finally, while less significant than the interpretive problems discussed above, there is serious reason to doubt that the General Assembly would have drafted a statute affirmatively requiring foreign businesses to comply with a certification requirement in order to access the courts of this State, only to permit the gamesmanship that would

6

inevitably arise from *forbidding* a trial court from taking action to ensure that the requirement is met until the moment the jury is empaneled.[4]

Nothing in the language of N.C.G.S. § 57D-7-02(a) entitles an uncertified LLC plaintiff to wait until the moment the jury is empaneled to receive a certificate of authority or forbids a trial court from taking action to address such a plaintiff's lack of certification. Our caselaw and the analogous procedure described in the official comment to N.C.G.S. § 55-15-02 is instead consistent with a flexible, discretionary approach in which a trial court may, prior to trial, take appropriate action to address a plaintiff's lack of certification. At times, that may result in a stay of proceedings to allow the plaintiff time to obtain a certificate of authority. *See id*; *cf. Kyle & Assocs., Inc. v. Mahan*, 161 N.C. App. 341, 344 (2003) (affirming the trial court's denial of the defendant's motion to strike on the basis of the plaintiff corporation's lack of certification where the plaintiff received its certificate prior to the hearing on the motion), *aff'd*, 359 N.C. 176 (2004). At others, dismissal or summary judgment may be appropriate. *Harold Lang*, 156 N.C. App. at 192; *Leasecomm*, 122 N.C. App. at 122. In any event, these are matters we have previously recognized as within the discretion of our trial courts so that they can ensure foreign business plaintiffs do not

---

[4] Indeed, even setting aside the conflict the Majority's interpretation would create with the statutorily mandated timeframe in which a trial court must resolve certification issues, there are cases—like *Leasecomm* itself—which have no realistic possibility of ever reaching trial. *See Leasecomm*, 122 N.C. App. 119, 121 (concerning the registration of a foreign judgment). If a trial court were not permitted to dismiss until the empanelment of the jury, a foreign business plaintiff would be functionally exempt from certification requirements in any such case.

eschew our State's certification requirements before "utilizing the courts of North Carolina." *Kyle & Assocs.*, 161 N.C. App. at 343. While permitting such an exercise of discretion in no way conflicts with such plaintiffs' statutory *obligation* to "obtain[] a certificate of authority prior to trial[,]" N.C.G.S. § 57D-7-02(a) (2022), a reading of the statute that ties the hands of our trial courts renders the entirety of N.C.G.S. § 57D-7-02 a dead letter.

In an attempt to evade the cascade of irreconcilable conflicts with our existing law arising from its interpretation of N.C.G.S. § 57D-7-02(a), the Majority accepts perhaps the most dubious of Plaintiff's arguments: that the "trial judge" should have resolved the matter rather than what Plaintiff terms the "motions judge." Even setting aside the fact that all of the aforementioned problems with its reading of N.C.G.S. § 57D-7-02(a) still exist—*Harold Lang*, as explained previously, would be incorrectly decided by the Majority's logic since the trial court dismissed that plaintiff's case before the jury was empaneled, *see Harold Lang*, 156 N.C. App. at 189—neither the Majority nor Plaintiff point to any controlling cases in which a "trial judge" has meant something other than a judge presiding over the trial court or has constituted limiting language differentiating one judge from another within the same tribunal. And, for Plaintiff's part, the term "motions judge" has never appeared in either our statutes or our caselaw.

What our caselaw does reveal is that, in in judicial writing and statutory construction, just as in practice, "trial court" and "trial judge" are generally

8

synonymous unless it is contextually clear that "judge" refers to the particular official presiding over the court. *See State v. Thompson*, 254 N.C. App. 220, 223 (2017) (marks omitted) ("In reviewing whether a trial judge abused his discretion, we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record."); *State v. VanCamp*, 150 N.C. App. 347, 354 (2002) ("In *Boykin,* the trial court polled the jurors as to what they had seen, as in the present case, the trial judge asked counsel if they had any questions and they indicated that they did not have any."); *Matter of E.D.*, 372 N.C. 111, 119 (2019) (citations omitted) ("In each of these cases we concluded that there was a statutory mandate that automatically preserved an issue for appellate review when the mandate was directed to the trial court either: (1) by requiring a specific act by the trial judge; or (2) by requiring specific courtroom proceedings that the trial judge has authority to direct."); *State v. Chandler*, 376 N.C. 361, 366 (2020) (same). *But see Daughtridge v. N. Carolina Zoological Soc'y, Inc.*, 247 N.C. App. 33, 36 (2016) (marks omitted) ("[O]ne trial judge may not reconsider and grant a motion for summary judgment previously denied by another judge."). Our best available legal definitions recognize this interchangeability. *Court*, Black's Law Dictionary 444 (11th Ed. 2019) (emphasis added) ("A place where justice is judicially administered; the locale for legal proceedings . . . . *The judge or judges who sit on such a tribunal*[.]"); *Judge*, Black's Law Dictionary 1005 (11th Ed. 2019) (emphasis added in part) ("A public official appointed or elected to hear and decide legal matters in court; a judicial officer

who has the authority to administer justice. . . . [I]n ordinary legal usage, the term is limited to the sense of an officer who (1) is so named in his or her commission, and (2) presides in a court. *Judge is often used interchangeably with court.*").

Indeed, North Carolina has, for nearly four decades, rejected the Majority's understanding of the term "trial judge." Between 1970 and 1975, we consistently interpreted "trial judge," as used in N.C.G.S. § 1-282 and Rule 50 of the Rules of Practice in the Court of Appeals, to invalidate orders extending the time for service of cases on appeal by judges who did not personally preside over the trials at issue. *See, e.g.*, *State v. Lewis*, 9 N.C. App. 323 (1970); *State v. Baker*, 8 N.C. App. 588 (1970); *Keyes v. Hardin Oil Co.*, 13 N.C. App. 645 (1972); *State v. Taylor*, 14 N.C. App. 703, *cert. denied*, 281 N.C. 763 (1972); *see also* N.C.G.S. § 1-282 (1969) ("If it appears that the case on appeal cannot be served within the time prescribed above, the trial judge may, for good cause and after reasonable notice to the opposing party or counsel, enter an order or successive orders extending the time for service of the case on appeal and of the countercase or exceptions to the case on appeal."). Our Supreme Court and General Assembly abrogated these cases in 1975 with the repeal of N.C.G.S. § 1-282 and the enactments of Rule 36 of the Rules of Appellate Procedure and N.C.G.S. § 1-283, clarifying that "trial judge," for purposes of our interpretation, means "the judge of [S]uperior [C]ourt or of [D]istrict [C]ourt from whose order or judgment an appeal has been taken . . . ." N.C.G.S. § 1-283 (2022); *cf.* N.C. R. App. P. 36(a)(1)-(2) (2023) ("The judge who entered the judgment, order, or other determination from which

10

appeal was taken . . .").[5] The Majority's resurrection of this Court's long-corrected, half-century-old interpretation of "trial judge" solves none of the outstanding conceptual problems with its reading of N.C.G.S. § 57D-7-02 and presents an open invitation for appellants to engage in the type of gamesmanship the 1975 clarifications sought to avoid.

Although the Majority's analysis of N.C.G.S. § 57D-7-02 and perplexing readings of *Leasecomm* and *Harold Lang* do not, in my view, justify our holding, I agree the trial court's order should be reversed because, in order for Plaintiff to have been required to obtain a certificate of authority at all, the trial court must have found sufficient facts on the Record to support its conclusion that Plaintiff was actually

---

[5] N.C.G.S. § 1-283, entitled "[t]rial judge empowered to settle record on appeal; effect of leaving office or of disability[,]" reads in full as follows:

> Except as provided in this section, only the judge of superior court or of district court from whose order or judgment an appeal has been taken is empowered to settle the record on appeal when judicial settlement is required. A judge retains power to settle a record on appeal notwithstanding he has resigned or retired or his term of office has expired without reappointment or reelection since entry of the judgment or order. Proceedings for judicial settlement when the judge empowered by this section to settle the record on appeal is unavailable for the purpose by reason of death, mental or physical incapacity, or absence from the State shall be as provided by the rules of appellate procedure.

N.C.G.S. § 1-283 (2022). "Although the title given to a particular statutory provision is not controlling, it does shed some light on the legislative intent underlying the enactment of that provision." *State v. James*, 371 N.C. 77, 87 (2018). Here, the recapitulative function of N.C.G.S. § 1-283's title signals that, since the General Assembly and our Supreme Court corrected our jurisprudence with respect to the term "trial judge" in 1975, "trial judge" means "the judge of superior court or of district court from whose order or judgment an appeal has been taken . . . ." N.C.G.S. § 1-283 (2022); *see also id.* (marks omitted) ("[E]ven when the language of a statute is plain, the title of an act should be considered in ascertaining the intent of the legislature.").

"transacting business" in North Carolina. Here, as the trial court's findings on the Record did not support a determination that Plaintiff was transacting business in North Carolina, I would reverse the trial court's order on that basis.

"[T]ransacting business in this State[,]" for purposes of N.C.G.S. § 57D-7-02(a), requires more than an isolated act or acts. N.C.G.S. § 57D-7-02(a) (2022). Without more,

> a foreign LLC is not considered to be transacting business in this State for the purposes of this Chapter by reason of . . . [m]aintaining or defending any proceeding . . . [,] [t]ransacting business in interstate commerce[,] [or] [c]onducting an isolated transaction completed within a period of six months but not repeated transactions of a similar nature.

N.C.G.S. § 57D-7-01(b)(1), (8), (9) (2022); *see also Quantum Corporate Funding, Ltd. v. B.H. Bryan Bldg. Co.,* 175 N.C.App. 483, 486 (2006) (remarking that, with respect to the analogous registration requirements for corporations, "a foreign corporation need not obtain a certificate of authority in order to maintain an action or lawsuit so long as the company is not otherwise transacting business in this State"). Rather, "[o]ur Court has interpreted transacting business to 'require the engaging in, carrying on or exercising, in North Carolina, some of the functions for which the [business] was created.'" *Harbin Yinhai Tech. Dev. Co. v. Greentree Fin. Grp., Inc.*, 196 N.C. App. 615, 624 (2009) (quoting *Harold Lang*, 156 N.C. App. at 190). "The activities carried on by a corporation in North Carolina must be substantial, continuous, systematic, and regular" to qualify, and "[t]ypical conduct requiring a certificate of authority

12

includes maintaining an office to conduct local intrastate business, selling personal property not in interstate commerce, entering into contracts relating to the local business or sales, and owning or using real estate for general [business] purposes." *Id.*

In its findings of fact, the trial court noted that "Plaintiff entered a contract with The Coves at Newport II Association . . . to perform remediation and repair services for damaged units" and that "Plaintiff . . . contracted with BJ & Associates, Inc., d/b/a G.A. Jones Construction (G.A. Jones), a North Carolina Corporation transacting business in North Carolina[] [and] serv[ing] as general contractor for the Coves." The trial court also remarked that, "[i]n entering the transactions at issue in this litigation, Plaintiff engaged in, carried on, and exercised in North Carolina, the functions for which Plaintiff was created, namely, emergency services for real properties that have incurred water losses, as well as mold testing and remediation, moisture control, restoration services, and air duct cleanings." From this, the trial court concluded as a matter of law that "[t]here is no genuine issue of material fact that Plaintiff is a foreign [LLC] for purposes of [certification], transacting business in North Carolina."

This analysis does not justify the trial court's conclusion. N.C.G.S. § 57D-7-01(b)(10) specifies that "a foreign LLC is not considered to be transacting business in this State . . . by reason of . . . [c]onducting an isolated transaction completed within a period of six months but not repeated transactions of a similar nature." N.C.G.S. §

13

57D-7-01(b)(10) (2022). Assuming, *arguendo*, that entering into two distinct contracts in North Carolina qualifies as engaging in "repeated transactions"—which is itself doubtful given that the two contracts were only entered into to secure the completion of a singular project—N.C.G.S. § 57D-7-01(b) is a *non-exhaustive* list of activities a foreign LLC may perform without technically transacting business in North Carolina. *See* N.C.G.S. § 57D-7-01(b) (2022) (emphasis added) ("*Without excluding other activities that may not constitute transacting business in this State*, a foreign LLC is not considered to be transacting business in this State for the purposes of this Chapter by reason of conducting in this State any one or more of the following activities . . ."). By specifying in a non-exhaustive list that "an isolated transaction completed within a period of six months" does not itself qualify as transacting business but excluding "repeated transactions of a similar nature[,]" N.C.G.S. § 57D-7-01(b)(10) is not communicating that any foreign LLC technically engaging in multiple transactions in North Carolina automatically transacts business for certification purposes; rather, it is communicating that those multiple transactions are not *necessarily exempt* from the meaning of "transacting business." N.C.G.S. § 57D-7-01(b)(10) (2022).

The applicable standard remains that "[t]he activities carried on by [an LLC] in North Carolina must be substantial, continuous, systematic, and regular" to qualify as "transacting business." *Harbin Yinhai*, 196 N.C. App. at 624. The trial court's order, which specified only that Plaintiff entered into two contracts in North

Carolina in order to complete a single repair project, supported no such conclusion. However, as insufficient information exists in the Record from which we can discern whether Plaintiff's other business activities in North Carolina, if any, either in isolation or in combination with those discussed above, qualify as "substantial, continuous, systematic, and regular," *id.*, or whether "any party [was otherwise] entitled to a judgment as a matter of law[,]" N.C.G.S. § 1-A1, Rule 56(c) (2022), I would reverse the order of the trial court and remand for further findings of fact adequately supporting a determination of whether Plaintiff was transacting business in North Carolina. In the event the trial court found Plaintiff had conducted sufficient activities in North Carolina to require certification, dismissal at this point in the proceedings would be proper. However, if the trial court's factfinding revealed no further instances in which Plaintiff had conducted business activities in North Carolina, Plaintiff would not be required to obtain a certificate of authority.